IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE EICHLER,

    Plaintiff,                    No. CIV S-04-1108 GEB JFM P

    vs.

CDC OFFICER SHERBIN, et al.,

    Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Defendant Mercy Hospital of Folsom has filed a motion for summary judgment.

FACTS AND PROCEDURAL BACKGROUND

        In his third amended complaint filed July 14, 2005, plaintiff alleges defendants were deliberately indifferent to his serious medical needs and subjected him to cruel and unusual punishment. He also raises state law claims of negligence and medical malpractice resulting from an injury he sustained at New Folsom State Prison on or about June 1, 2003. Specifically, plaintiff alleges defendant Mercy Hospital "refused to treat plaintiff who had a serious medical need, on or about June 1, 2003." (Amended Complaint at 7.)

/////

1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
6  1436 (9th Cir. 1987).

7        In the endeavor to establish the existence of a factual dispute, the opposing party
8  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'"  Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14       In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
17 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
26 /////

On October 22, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

ANALYSIS

I. Undisputed Facts

While an inmate at New Folsom State Prison, plaintiff's face was slashed on the left side with a razor blade on June 1, 2003. At approximately 5:59 p.m., paramedics from a Folsom City Fire Department Ambulance made contact with plaintiff; plaintiff was then taken to defendant Mercy Hospital of Folsom. Plaintiff arrived at Mercy Hospital of Folsom at approximately 6:25 p.m.

The laceration to plaintiff's face measured 12 centimeters or 5 inches in length, it was 2 or 3 centimeters deep through the skin and all soft tissue structures to the buccal mucosa, which is the mucous membrane on the inside of the cheek.

Gel foam bandages were put on plaintiff's wound. (Pl.'s June 26, 2006 Aff. at 18.)

Plaintiff's vital signs were checked during the two hours he was at Mercy Hospital of Folsom, with his blood pressure and pulse rate being taken at least four different times.

Plaintiff's wound was not sutured at Mercy Hospital of Folsom but he was transferred to UC Davis Medical Center.

Once at UC Davis Medical Center, plaintiff's wound was sutured layer by layer by a specialist who noted that both the facial nerve and the parotid gland were intact.

II. Plaintiff's Claims

   A. Eighth Amendment

In order to prevail on his Eighth Amendment claim, plaintiff must prove that he had a "serious medical need" and that defendants acted with "deliberate indifference" to that

need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle, 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence is insufficient for Eighth Amendment liability. See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Whether a defendant had requisite knowledge of a substantial risk is a question of fact, and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. See Farmer, 511 U.S. at 842. While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Id. Deliberate indifference specifically to medical needs "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). However, delay in providing medical treatment to a prisoner does not constitute deliberate indifference unless the delay causes substantial harm. See Shapely v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985). Additionally, "a plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (as amended) (1996).

1    Plaintiff alleges defendant Mercy Hospital of Folsom failed to treat plaintiff
2 because the emergency room doctor refused to suture plaintiff's wound, opting instead to transfer
3 plaintiff to the UCD Medical Center.  Plaintiff has provided no expert declarations in support of
4 his position, relying solely on his own affidavit.
5    Defendants, on the other hand, have provided two expert declarations.  The first
6 declaration is signed by Grant G. Nugent, M.D., a medical doctor, licensed to practice medicine
7 in California, who has practiced emergency medicine since 1974.  Dr. Nugent treated plaintiff on
8 June 1, 2003.  Dr. Nugent declared that plaintiff's laceration was bleeding, but was controlled by
9 direct pressure.  Dr. Nugent characterized plaintiff's laceration as "critical" due to its depth and
10 severity and opined that it required closing by a plastic surgeon.  Dr. Nugent was concerned that
11 plaintiff's facial nerve or parotid gland had been injured, which would have required "plastic
12 surgery revision by a specialist."  (Nugent Decl. at 2.)
13    The second declaration is signed by Robert E. Buscho, M.D., a medical doctor,
14 licensed to practice medicine in California, who has practiced emergency medicine since 1975.
15 Dr. Buscho stated he is familiar with the standard of care applicable to Mercy Hospital of Folsom
16 and Dr. Grant G. Nugent, in the same or similar circumstances as those presented herein.  Dr.
17 Buscho opined that plaintiff sustained a severe injury to his face requiring a higher level of care
18 than could be provided at Mercy Hospital.  Dr. Buscho stated that it was his expert opinion that it
19 was "entirely appropriate and within the standard of care for Mr. Eichler to be transferred to U.C.
20 Davis Medical Center for treatment."  (Buscho Decl. at 2.)
21    Dr. Buscho characterized plaintiff's injury as "severe."  Dr. Buscho opined that
22 based on the location of the laceration, it was a strong probability that plaintiff had sustained
23 injury to the parotid duct and/or facial nerves, which would require repair by a plastic surgeon,
24 which was not available at Mercy Hospital of Folsom.  Dr. Buscho confirmed that plaintiff was
25 examined and stabilized while at Mercy Hospital of Folsom.  Dr. Buscho further opined that Dr.
26 Nugent was "acting in the interest of Mr. Eichler because repairing a cosmetically significant

laceration of this extent is better off in the hands of a plastic surgeon than an emergency physician. The results will be better." (Buscho Decl. at 3.)

In addition, Dr. Buscho opined that plaintiff was "stabilized and the bleeding was controlled." (Id.) Dr. Buscho stated that Dr. Nugent made arrangements for plaintiff to be transferred to the UCD Medical Center where he was accepted by Dr. Hahn, a plastic surgeon available to care for plaintiff's injury. (Id.) Dr. Buscho confirmed that plaintiff's wound was sutured layer by layer by a specialist who noted that both the facial nerve and the parotid gland were intact. (Id.) In Dr. Buscho's expert opinion, "transfer to a higher level of care for this injury was a necessity." (Id.)

Dr. Buscho confirmed that both Mercy Hospital of Folsom and UCD Medical Center medical records estimated plaintiff's blood loss at 500 cc's, which represented about 10 to 15% of plaintiff's total blood volume. (Buscho Decl. at 4.) Dr. Buscho opined that a 500 cc estimated blood loss for the severity of this laceration was not surprising. (Id.)

Dr. Buscho opined that the application of direct pressure to control the bleeding was appropriate and that "[a]ny attempt to ligate the bleeding vessels by physicians or personnel not trained in plastic surgery could have resulted in damage to vital facial structures." (Id.) Dr. Buscho noted plaintiff's "bleeding was controlled at approximately 7:15 p.m., or 45 minutes after his presentation to Mercy Hospital of Folsom." (Id.) Dr. Buscho opined that was a "reasonable time in which to control the bleeding, especially considering the location of the laceration." (Id.) Dr. Buscho stated "it is not easy to control bleeding in a 5-inch laceration of this depth and length on the face." (Id.) Dr. Buscho opined that the "nurse's use of pressure dressing applied with gelfoam was appropriate and the standard of care." (Id.) Dr. Buscho further opined that both the nurses and hospital personnel who treated plaintiff on June 1, 2003 "met the applicable standard of care," and in his expert opinion, and the care and treatment rendered at Mercy Hospital of Folsom was "entirely appropriate and met the requisite standard of care." (Id.)

/////

1  Construing the allegations in the light most favorable to plaintiff, the failure to
2 suture plaintiff's wound does not demonstrate deliberate indifference. Rather, the medical
3 records from Mercy Hospital of Folsom and the expert declarations demonstrate that plaintiff
4 was appropriately treated by medical staff at Mercy Hospital. Plaintiff has provided no expert
5 medical opinion or other admissible evidence to the contrary.[1] Pressure and gelfoam bandages
6 were applied to stop the bleeding. A medical doctor made a reasonable decision that a 12 cm
7 slash to plaintiff's face would be better sutured by a specialist who was not available at Mercy
8 Hospital. The fact that plaintiff would have preferred to have been sutured at Mercy Hospital
9 rather than transferred to UCD Medical Center for treatment is a difference of opinion that does
10 not rise to the level of an Eighth Amendment violation. Franklin, 662 F.2d at 1344.

11  As for delay, it is undisputed that plaintiff was at Mercy Hospital for two hours.
12 Plaintiff has provided no evidence of substantial harm caused by the two hour delay. Plaintiff
13 was attended to by medical professionals during the two hours he was at Mercy Hospital. The
14 medical records confirm plaintiff was stable for transport. Once plaintiff arrived at the UCD
15 Medical Center, the specialist was able to suture the wound and there is no evidence in the record
16 suggesting that the two hour delay posed any difficulty to the UCD specialist. Accordingly,
17 defendant Mercy Hospital of Folsom is entitled to summary judgment.

18  Plaintiff also cannot meet the objective requirement that the alleged deprivation of
19 medical care is serious enough to rise to cruel and unusual punishment because he has not
20 demonstrated that he was deprived of necessary medical care. Farmer, 511 U.S. at 298. Indeed,
21 it appears plaintiff was provided a higher standard of care by his transfer to the UCD Medical
22 Center where he was sutured by a specialist.

23 /////
24 /////
25

26  [1] Although plaintiff attempted to articulate disputed issues of material fact, he offered only his lay opinion as to the medical treatment. Plaintiff was required to offer expert testimony.

8

B. The Emergency Medical Treatment and Active Labor Act (EMTALA)

The Emergency Medical Treatment and Active Labor Act (EMTALA) was enacted by Congress in 1986 in response to a growing number of hospitals that were refusing to provide emergency medical treatment or transferring emergency patients for treatment to other facilities, especially those patients who were indigent and uninsured.  Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1255 (9th Cir. 1995).  Title

> 42 U.S.C. § 1395dd(a) provides that if any individual comes to the emergency department of a hospital which participates in Medicare, and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital "must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists."
>
> If the hospital determines that the individual has an emergency medical condition, the hospital must provide either-
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.
>
> 42 U.S.C. § 1395(b).

Eberhardt, 62 F.3d 1255-56.

Mercy Hospital of Folsom medical records contain the Transfer Summary form authorizing plaintiff's transfer to the UCD Medical Center.  Plaintiff was taken by ambulance and accompanied by a paramedic.  Dr. Nugent signed the transfer form and marked the following box:

> I have examined this patient and hereby certify, that based upon the information available to me at the time of the transfer the medical benefits reasonably expected from the provision of the appropriate medical treatment at another facility outweigh the risks to the individual (and in case of labor, to the unborn child) from effecting transfer.

9

(Pearson Decl., Ex. B.)

The transfer form noted plaintiff's vital signs were: blood pressure 115/54; heart rate 89, respiration rate 16 and temperature 97.

Dr. Nugent opined that "the medical benefits reasonably expected from the provision of the appropriate medical treatment at U.C. Davis Medical Center outweighed the risks to Mr. Eichler from the transfer to U.C. Davis Medical Center." (Nugent Decl. at 2-3.) Dr. Buscho agreed with Dr. Nugent's assessment. (Buscho Decl. at 3.) Plaintiff was medically stable while at Mercy Hospital and the transfer to UCD Medical Center was safe. (Buscho Decl. at 3.) It is undisputed that plaintiff's vital signs were checked four times during the two hours he was at Mercy Hospital. Dr. Buscho noted that plaintiff did not experience significant changes in these vital signs indicating he was in danger. (Buscho Decl. at 3-4.) Because his bleeding was controlled and his vital signs were stable, plaintiff was stable for transport. (Buscho Decl at 4.)

The medical records as well as the medical experts confirm that plaintiff was properly screened at Mercy Hospital of Folsom and stablized for plaintiff's transfer to UCD Medical Center. Plaintiff has provided no evidence to the contrary, other than his personal affidavit which is insufficient to rebut expert medical opinion. Defendant Mercy Hospital therefore complied with the EMTALA and is entitled to summary judgment on this claim as well.

C. State Law Claim of Negligence/Medical Malpractice

The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. However, when all federal claims have been dismissed before trial, the interests promoted by supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state law claims. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988).

/////

/////

Plaintiff's Motion to Amend

On June 12, 2006, plaintiff filed a motion for leave to file an amended complaint, along with a proposed amended complaint.[2] Plaintiff seeks to amend his complaint to substitute the Mercy Hospital of Folsom physician and nurse who treated him for defendants named as John Does. Defendant Hospital opposes plaintiff's motion to amend, arguing that plaintiff became aware of Dr. Nugent and RN Romano's identities as early as March 1, 2006, but plaintiff waited almost four months to file the instant motion. Defendant points out that plaintiff has attempted to raise new allegations and argues that plaintiff should not be allowed to add new allegations at this late stage of the proceeding. Defendant notes plaintiff added new allegations against Dr. Nugent and RN Romano (paragraphs 31 and 32) and alleges conspiratorial conduct on the part of Dr. Nugent and RN Romano and bad practices with regard to charting (paragraphs 53-55).

The CDC Officer defendants did not file an opposition.

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Once a responsive pleading is filed, however, plaintiff must seek leave of court. Also, once a scheduling order has been entered, the more restrictive provisions of Fed. R. Civ. P. 16(b), requiring a showing of "good cause" for failing to amend prior to the deadline in that order apply. See Coleman v. Quaker Oats, 232 F.3d 1271, 1272 (9th Cir. 2000); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).

> Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment. Loehr, 743 F.2d at 1319; Howey, 481 F.2d at 1190. These factors, however, are not of equal weight in that delay, by itself, is

---

[2] On November 29, 2005, plaintiff filed a document entitled "Third Amended Complaint." The November 29, 2005 filing was not accompanied by a motion to amend. Accordingly, the November 29, 2005 third amended complaint will be placed in the court file and disregarded.

insufficient to justify denial of leave to amend. Webb, 655 F.2d at 980; Hurn v. Retirement Fund Trust of Plumbing, 648 F.2d 1252, 1254 (9th Cir.1981).

DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185-86 (9th Cir. 1987)(Delay alone is not reason to preclude an amendment and there was not a sufficient showing of prejudice. Id. at 187-88.)

Plaintiff seeks leave to substitute Dr. Nugent and RN Romano as defendants who were initially named as John Does, to correct certain spellings, and to add claims concerning Dr. Nugent and RN Romano. The Emergency Medical Treatment and Active Labor Act (EMTALA) does not provide a private right of action against hospital employees. "The plain text of the EMTALA explicitly limits a private right of action to the participating hospital." Eberhardt, 62 F.3d 1256. Plaintiff's motion to amend to name the physician and nurse under a theory of violating the EMTALA should therefore be denied.

Moreover, plaintiff's theory that Dr. Nugent and RN Romano should have provided medical treatment different from the treatment they provided is insufficient to demonstrate deliberate indifference to plaintiff's medical needs. It boils down to plaintiff's lay opinion that his facial laceration should have been sutured by Dr. Nugent, an emergency room physician, rather than being transferred to UCD Medical Center for treatment by a plastic surgeon. This amounts to a difference of opinion as to the course of treatment which is "insufficient, as a matter of law, to establish deliberate indifference." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (as amended) (1996).

Finally, based on the recommendation that defendant Mercy Hospital's motion for summary judgment be granted, it would not be appropriate to amend the complaint to substitute in these defendants. Accordingly, plaintiff's motion to amend should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The June 9, 2006 motion for summary judgment filed by defendant Mercy Hospital of Folsom be granted. (Docket No. 76.)

/////

2. Plaintiff's June 12, 2006 motion to amend to substitute names for John Doe defendants is denied. (Docket No. 81.)

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 95 1 F.2d 1153 (9th Cir. 1991).

DATED: September 25, 2006.

UNITED STATES MAGISTRATE JUDGE

/001;eich1108.msj