IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE EICHLER,

    Plaintiff,                      No. CIV S-04-1108 GEB JFM P

    vs.

CDC OFFICER SHERBURN, et al.,

    Defendants.                <u>FINDINGS & RECOMMENDATIONS</u>

_____/

    Plaintiff is a state prison inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Defendants Sherburn and Lebeck have filed a motion for summary judgment.

FACTS AND PROCEDURAL BACKGROUND

    In his third amended complaint filed July 14, 2005, plaintiff alleges defendants were deliberately indifferent to his serious medical needs and subjected him to cruel and unusual punishment, and also raises state law claims of negligence and medical malpractice resulting from an injury he sustained at New Folsom State Prison on or about June 1, 2003. Specifically, plaintiff alleges defendants Sherburn and Lebeck violated plaintiff's right to be free from cruel and unusual punishment and failed to protect plaintiff. (Amended Complaint at 13.) Plaintiff also included a negligence claim under state law.

1

On August 11, 2006, plaintiff filed a 357 page opposition to defendants' motion for summary judgment. Plaintiff included allegations and arguments unrelated to his claims against defendants Sherburn and Lebeck, many of which were not included in the operative complaint herein. The instant findings and recommendations solely address plaintiff's claims as to defendants Sherburn and Lebeck which are included in the operative complaint.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> 
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On October 22, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

ANALYSIS

I. Undisputed Facts

Plaintiff was incarcerated at New Folsom State Prison on June 1, 2003.

Defendant D. Sherburn was a correctional officer and J. Lebeck was a correctional officer, both stationed at New Folsom State Prison. Defendants Sherburn and Lebeck were supervising plaintiff's housing unit on June 1, 2003.

Plaintiff was housed in building B-3. Building B-3 is split into three wedges, which are called A, B and C blocks. Each of these housing units are divided by walls. There is a control booth in the middle of building three. The control booth is located on the second floor of the building. This position provides the control booth operator an unobstructed view of all the cells in the building.

New Folsom State Prison was on lockdown on June 1, 2003. (Pl.'s August 11, 2006 Affidavit at 10.) Because of the lockdown, most of the inmates in B-3 were confined to their cells. During the lockdown, B-3 was searched for weapons.

On June 1, 2003, defendant Lebeck was supervising the inmates in B-3 from the control booth. Officers Bristow and defendant Sherburn were supervising inmates on the floor of B-3. Plaintiff and approximately five other porters were released to collect food trays in B-3.

/////

4

At some point after defendant Sherburn left A block, plaintiff began to collect food trays in A block.

Inmates Austin and Gates occupied cell 211 in A block. At some point, plaintiff approached cell 211. Austin's conduct upset plaintiff. Therefore, plaintiff returned to his cell to "cool off" and wash his face. At some later point, plaintiff again approached cell 211. After briefly speaking with Gates, plaintiff walked away from cell 211. However, Austin persuaded plaintiff to come back to cell 211.[1] Without any warning, Austin slashed plaintiff with an inmate-manufactured weapon. Plaintiff had not seen anything so fast in his life.

After realizing he was injured, plaintiff did not immediately seek medical attention or notify correctional staff. First, he went to his cell to inspect the wound. Next, plaintiff placed a towel on his face and walked to B block to discuss the incident with another inmate.

After arriving at the Emergency Room, plaintiff received medical treatment.

Officer Lebeck saw plaintiff with a blood-soaked towel on his face. (Pl.'s August 11, 2006 Aff. at 14.)

Officer Sherburn wasn't in the building at the time plaintiff's face was slashed. (Pl.'s August 11, 2006 Aff. at 31.)

Defendant Lebeck was observing Officer Bristow and another inmate in B Block. Bristow was helping another inmate with a plumbing problem in B Block; that inmate was out of his cell and working with tools.

Plaintiff held an inmate job as tier tender, which required him to "perform any additional duties requested or ordered by [his] supervisor and staff." (Pl.'s Pretrial Stmt., Ex. P.)

//////

---

[1] Although plaintiff attempts to dispute facts surrounding his trips to cell 211, his deposition testimony confirmed he approached cell 211 on three separate occasions. (Pl.'s Dep. at 30-60.)

5

1  Plaintiff has provided a copy of the May 27, 2003 State of California
2  Memorandum concerning "B Facility Lockdown Program Status (Level IV). (Pl.'s Pretrial Stmt.,
3  Ex. A "Lockdown Memo," filed immediately preceding Ex. P.) This memo recounts the history
4  of violent incidents supporting the facility captain's decision to place B Facility on lockdown.
5  (Id. at 1.) The memo states that

> [s]ubsequent to these events, numerous inmate-manufactured weapons have been discovered in the possession of White and Southern Hispanic inmates. . . . On May 5, 2003, two separate stabbing assaults occurred involving White inmates, in which both victims sustained serious injuries. Based upon these incidents, the following program is in effect:
> Escorts: All Level IV Whites, Blacks and Southern Hispanics will be escorted, unrestrained. Escorts shall be:
> •   One Inmate = One Officer
> •   Two to Five Inmates = Two Officers
> •   Five - Ten inmates = Three Officers
>
> . . .
>
> Meals:   Normal cell feeding for all Level IV inmates.

Id.

15  Plaintiff is Caucasian and is classified as a Level IV inmate. (Pl.'s Pretrial Stmt.,
16  Ex. L at 4.)

II. Plaintiff's Claims

18  Plaintiff's claim is rooted in the Eighth Amendment's prohibition of cruel and
19  unusual punishment. "Not every governmental action affecting the interests or well-being of a
20  prisoner is subject to Eighth Amendment scrutiny, however." Whitley v. Albers, 475 U.S. 312,
21  319 (1986). It is "unnecessary and wanton infliction of pain" that constitutes cruel and unusual
22  punishment forbidden by the Eighth Amendment. See id.; Ingraham v. Wright, 430 U.S. 651,
23  670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). "It is obduracy and wantonness, not
24  inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and
25  Unusual Punishments Clause." Whitley, 475 U.S. at 319.

26  /////

The protection an inmate is given against other inmates is a condition of confinement subject to the strictures of the Eighth Amendment.  See Wilson v. Seiter, 501 U.S. 294, 303 (1991).  Not every injury suffered by one prisoner at the hands of another will translate into constitutional liability for the prison officials responsible for the victim's safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A prison official violates the Eighth Amendment only when two requirements are met:  (1) the deprivation alleged is "sufficiently serious," and (2) the prison official has a sufficiently culpable state of mind.  Farmer, 511 U.S. 834.

The "sufficiently serious" requirement is met when the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Where a claim is based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  See Helling v. McKinney, 509 U.S. 25 (1993).

> Given the violent propensities of some prisoners, no prison can prevent all attacks on inmates by other inmates.  [Citations omitted.].  Thus, the risk of inmate assaults must reach sufficiently serious proportions in order to implicate constitutional concerns.

Madrid v. Gomez, 889 F.Supp. 1146 (N.D. Cal. 1995).

The requirement that the official have a sufficiently culpable state of mind derives from the principle that only unnecessary and wanton infliction of pain implicates the Eighth Amendment.  Farmer, 511 U.S. at 834.  The necessary state of mind in prison conditions cases is one of deliberate indifference to inmate health or safety.  Id.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 835.

/////

To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. See id. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id. The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur. Redman v. County of Sacramento, 942 F.2d 1435, 1442 (9th Cir. 1991)(en banc), citing Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (summary judgment appropriate as to defendants when plaintiff "failed to come forward with facts showing that these defendants had any reason to believe he would be attacked by the assailant"). The Redman court found that "conduct that is so wanton or reckless with respect to the 'unjustified infliction of harm as is tantamount to a knowing willingness that it occur [is] also suffic[ient] to establish liability because it is conduct equivalent to a deliberate choice." Redman, 942 F.2d at 1443. An inquiry into a prison official's state of mind is necessary for an alleged Eighth Amendment violation. Id.

Moreover, when, as here, the prisoner seeks damages against a defendant, the "inquiry into causation must [also] be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988). Leer explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages." Id. In the former case, a broader and more generalized approach to causation is taken. See id.

When a plaintiff seeks to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation must be refined. Id. at 633. The court must focus on whether the individual defendant was in a position to take steps to avert the harm, but failed to do so intentionally or

with deliberate indifference.  Id.  In order to resolve causation, the court must take an "individualized approach which accounts for the duties, discretion, and means of each defendant."  Id. at 633.  Plaintiff must establish individual fault.  Id. at 634.  "Sweeping conclusory allegations will not suffice to prevent summary judgment. . . .  The prisoner must set forth specific facts as to each individual defendant's deliberate indifference."  Id. at 634 (citations omitted).

A two-part test applies to analysis of the qualified immunity defense.  Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003) (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  First, the court looks at "whether the facts alleged 'show [that] the officer[s'] conduct violated a constitutional right," and second, "whether the constitutional right in question was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Martinez, id. (quoting Saucier, 533 U.S. at 201-02.)

The dispute here focuses on whether defendant Lebeck and Sherburn were deliberately indifferent to plaintiff's safety because the parties agree about the sequence of events immediately preceding the slashing, vis a vis, plaintiff's three trips to cell 211.  Defendants met their summary judgment burden by pointing to the absence of evidence that demonstrate they acted with deliberate indifference at the time plaintiff was left unsupervised on B-3 facility.  Both claim they had no knowledge of any animosity between Austin and plaintiff.  It is undisputed that plaintiff failed to inform defendant Lebeck that plaintiff was arguing with inmates in cell 211. (Pl.'s Dep. at 48.)

Plaintiff has offered no evidence showing either defendant had specific knowledge of a specific threat from inmate Austin toward plaintiff.  However, plaintiff maintains he discussed the issue of safety with the other tier tenders and defendant Sherburn on June 1, 2003.  (Pl.'s Dep. at 19-20.)  Plaintiff states that when defendant Sherburn announced he would be leaving, plaintiff expressed his concern about their safety.  (Dep. at 21.)  Defendants have offered no facts to the contrary.  If defendant Sherburn directed plaintiff to await his return to

pick up dinner trays, as plaintiff asserts, that fact could lead to an inference that defendant Sherburn was aware of the risk of injury in performing this duty.

Moreover, plaintiff has provided evidence that during the lockdown, all Level IV caucasians were to be escorted while unrestrained in the prison.[2] It is undisputed that plaintiff was left unsupervised on B-3 facility. Indeed, it is undisputed plaintiff made three separate trips to cell 211 in A Block, that he returned to his cell in B Block and to visit another inmate on B Block on two separate occasions--first, before he was injured and second, after he was injured. This lack of escort and lack of direct supervision are facts from which deliberate indifference could be inferred. It is thus a jury question whether defendants were deliberately indifferent by failing to supervise or escort plaintiff while he was left, unrestrained and unescorted on B-3 facility, either to await Sherburn's return or to pick up dinner trays if directed by defendant Lebeck. It is undisputed that defendant Lebeck was supervising another inmate who was working with tools at the time plaintiff was slashed. It is undisputed defendant Sherburn was out of the building at the time plaintiff was slashed.

The fact that the unit was on lockdown after numerous violent incidents and the fact that numerous inmate-manufactured weapons had been discovered in the possession of White and Southern Hispanic inmates give rise to a reasonable inference that there was a heightened risk of injury during this time. If the unit was supposed to come off lockdown the next day (Pl.'s Dep. at 19), that fact could give rise to an inference that the risk of injury had diminished.

Viewing the facts in the light most favorable to plaintiff, a reasonable person could find that both defendants were in a position to avert the slashing incident because if they

---

[2] Plaintiff also maintains that under prison regulations his work as a tier tender required direct supervision at all times, particularly when delivering and picking up food trays from the food ports. (See also pl.'s Dep. at 17.) Defendants have not provided any regulations to the contrary. Plaintiff declares there have been many incidents of slashings and other violent acts through food ports, which is why constant supervision is required. (Id. at 17-19.)

had been properly supervising or escorting plaintiff, they could have prevented plaintiff from returning to cell 211 a second and third time.  It is undisputed plaintiff was not picking up dinner trays at the time he was slashed.

In sum, there are disputed issues of material fact as to whether defendants Lebeck and Sherburn were deliberately indifferent to plaintiff's safety by leaving him unrestrained and unescorted on B-3 facility, while the facility was on lockdown and after numerous inmate weapons had been confiscated.  When the evidence is viewed in the light most favorable to plaintiff, and inferences therefrom drawn in his favor, a reasonable jury could find that defendants were deliberately indifferent to a known risk to plaintiff's safety.  Defendants are therefore not entitled to judgment as a matter of law.

Because of these factual disputes, the individual officers whose motions for summary judgment this court recommends denying also are not entitled to summary judgment based upon qualified immunity.  See Santos v. Gates, 287 F.3d 846, 855 n.12 (9th Cir.2002) (declining to grant qualified immunity "because whether the officers may be said to have made a 'reasonable mistake' of fact or law, may depend upon the jury's resolution of disputed facts and the inferences it draws therefrom" (citation omitted)); see also Martinez v. Stanford, 323 F.3d 1178, 1184-85 (9th Cir.2003) (the "facts in dispute bearing on the question of qualified immunity" made summary judgment on that ground inappropriate).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The July 24, 2006 motion for summary judgment filed by defendants Sherburn and Lebeck be denied (Docket No. 103); and

2. This action be remanded to the undersigned for further scheduling order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).

DATED: September 29, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

/001;eich1108.msj2