1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DWAYNE EICHLER,

11              Plaintiff,                    No. 2:04-cv-1108 GEB JFM (PC)

12         vs.

13    CDC OFFICER SHERBURN, et al.,

14              Defendants.                   FINDINGS & RECOMMENDATIONS

15    _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17    42 U.S.C. §1983.  This action is proceeding on claims raised in plaintiff's third amended

18    complaint, filed July 14, 2005, against defendants Mercy Hospital of Folsom (Mercy) and

19    California Department of Corrections and Rehabilitation (CDCR) Correctional Officers

20    Sherburn[1] and Lebeck (Sherburn and Lebeck).  By separate orders, summary judgment was

21    entered in favor of Mercy and denied to Sherburn and Lebeck.  See Orders filed October 26,

22    2006 (Mercy) and November 1, 2006 (Sherburn and Lebeck).

23    /////

24    _____

25         [1]  Defendant Sherburn is sometimes identified in the record as Correctional Officer
      Sherbin.  It appears that the correct spelling of said defendant's name is Sherburn.  See Ex. B to
26    Defendants' Statement of Undisputed Facts, Declaration of D. Sherburn in Support of
      Defendants Motion for Summary Judgment, filed January 14, 2011.

1          On November 21, 2006, plaintiff filed a notice of interlocutory appeal from

2   several orders in this action.  On November 29, 2006, defendants Sherburn and Lebeck filed an

3   interlocutory appeal from the order denying summary judgment on the ground of qualified

4   immunity.  By order filed December 14, 2006, this action was stayed pending resolution of those

5   interlocutory appeals.[2]  By order filed June 23, 2008, the United States Court of Appeals for the

6   Ninth Circuit resolved the interlocutory appeal filed by defendants Sherburn and Lebeck,

7   affirming in part and vacating in part the denial of summary judgment, and remanding the matter

8   for further consideration of the defense of qualified immunity.  After intervening proceedings, on

9   January 14, 2011, defendants Sherburn and Lebeck filed a motion for summary judgment, which

10  is presently before the court.  On March 1, 2011, plaintiff filed an opposition to the motion for

11  summary judgment together with statements of disputed and undisputed facts, and on June 29,

12  2011, defendants filed a reply brief and objections to plaintiff's opposition.[3]

13        SUMMARY JUDGMENT STANDARDS UNDER RULE 56

14         Summary judgment is appropriate when it is demonstrated that there exists "no

15  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

16  matter of law."  Fed. R. Civ. P. 56(c).

17         Under summary judgment practice, the moving party

18      always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the
19      pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes
20      demonstrate the absence of a genuine issue of material fact.

21  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

22  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

23  _____

24     [2]  Plaintiff's appeal was dismissed on January 19, 2007.

25     [3]  After defendants Sherburn and Lebeck filed their motion for summary judgment, the
    court appointed counsel to represent plaintiff in this matter.  Plaintiff subsequently moved to
26  relieve his counsel and counsel moved to withdraw; the latter motion was granted by order filed
    June 21, 2011.

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

1   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

2   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

3   committee's note on 1963 amendments).

4           In resolving the summary judgment motion, the court examines the pleadings,

5   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

7   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

8   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

9   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

10  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

11  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

12  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

13  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

14  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

15  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

16          On October 22, 2004, the court advised plaintiff of the requirements for opposing

17  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

18  F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

19  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20                                                ANALYSIS

21          This action is proceeding on claims raised in plaintiff's third amended complaint,

22  filed July 14, 2005.  The claims arise from an incident at California State Prison-Sacramento on

23  June 1, 2003 when plaintiff was slashed by another inmate with an inmate-manufactured weapon.

24  Plaintiff alleges that defendants Sherburn and Lebeck violated his rights under the Eighth

25  Amendment by acting with deliberate indifference to plaintiff's safety.  Plaintiff also raises a

26  state law negligence claim against these two defendants.

As noted above, on November 1, 2006, a summary judgment motion filed by defendants Sherburn and Lebeck was denied by the district court.  By order filed June 23, 2008, the United States Court of Appeals for the Ninth Circuit remanded the matter for further consideration of the defense of qualified immunity.  Following a second order remanding claim against Mercy Hospital, the court of appeals directed the court to reconsider whether to exercise supplemental jurisdiction over plaintiff's state law claims, see Eichler v. Sherbin, No. 08-16404, slip op. at 5 (9th Cir. 2010), and this court subsequently issued an order that provided, inter alia, that this action would proceed on plaintiff's state law negligence claim.  See Order filed July 21, 2010 at 2.  By the instant motion, defendants Sherburn and Lebeck seek summary judgment on the merits of plaintiff's Eighth Amendment and negligence claims, contending that their acts or omissions were not the proximate cause of plaintiff's injuries.  Defendants also seek summary judgment on plaintiff's Eighth Amendment claim on the ground of qualified immunity.

I.  Undisputed Facts

On June 1, 2003, plaintiff was incarcerated at California State Prison-Sacramento (CSP-Sacramento).  Defendants Sherburn and Lebeck were correctional officers both stationed at CSP-Sacramento.  Defendants Sherburn and Lebeck were supervising plaintiff's housing unit on June 1, 2003.

Plaintiff was housed in building B-3.  Building B-3 is split into three wedges, which are called A, B and C blocks.  Each of these housing units are divided by walls.  There is a control booth in the middle of building B-3.  The control booth is located on the second floor of the building.  This position provides the control booth operator an unobstructed view of all the cells in the building.

On June 1, 2003, CSP-Sacramento was on a lockdown.  Because of the lockdown, most of the inmates in B-3 were confined to their cells.  During the lockdown, B-3 was searched for weapons.  Approximately three days before June 1, 2003, plaintiff was allowed out of his cell to resume some aspects of his job as a porter.  Ex. F to Defendants' Motion for Summary

1   Judgment, Deposition of Dwayne Eichler (Pl.'s Dep.) at 18:17-19:1.  This release was pursuant

2   to a "phased unlock" pursuant to which some inmates were preapproved to be released from the

3   lockdown to return to work.  Ex. C to Defendants' Motion for Summary Judgment, Declaration

4   of Steve Vance in Support of Motion for Summary Judgment (Vance Declaration), at ¶ 5.

5          On May 27, 2003, Correctional Captain Steve Vance wrote a memorandum

6   setting forth guidelines for the phased unlock of CSP-Sacramento.  Id. at ¶ 7.  The memorandum

7   required escorts for all Level IV White, Black, and Southern Hispanic inmates.  Ex. D to

8   Defendants' Motion for Summary Judgment.  The memorandum further provided for approved

9   workers to resume work on May 28, 2003.  Id.  The memorandum did not require porters to be

10  escorted.  Vance Declaration at ¶ ¶8-10.  The "Escorts" section of the memorandum did not

11  apply to inmate workers.  Id. at ¶¶10-11.

12         On June 1, 2003, defendant Lebeck was supervising the inmates in B-3 from the

13  control booth.  Officer Bristow and defendant Sherburn were supervising inmates on the floor of

14  B-3.  Plaintiff and approximately five other porters were released to collect food trays in B-3.

15         At some point when plaintiff was working in A block, defendant Sherburn

16  indicated that he was going to leave the floor.  Plaintiff told defendant Sherburn that he didn't

17  believe porters should be left alone during the lockdown because of the ongoing problems with

18  violence in the prison.  Pl.'s Dep. 19:12-23:14.  Plaintiff did not, however, actually expect that he

19  would be slashed.  Id. at 23:14-16.  During the conversation, defendant Sherburn said to plaintiff,

20  "Well, look, don't pick the trays up till I get back."  Id. at 24:8-9.  Plaintiff stated that they would

21  wait for some period of time, and defendants Sherburn and Lebeck both agreed that if defendant

22  Sherburn was not back plaintiff and the other porters should go ahead and pick up the trays.  Id.

23  at 25:5-24.  He subsequently had a similar conversation with defendant Lebeck about picking up

24  trays with only one other inmate porter.  Id. at 28:7-29:8.

25         Inmates Austin and Gates occupied cell 211 in A block.  Id. at 30:5-11.  Plaintiff

26  approached cell 211, and as he picked up their trays Austin started screaming.  Id. at 31:2-5.

1   Austin's conduct upset plaintiff, and plaintiff "grabbed their trays and set them down in front of

2   their cell." Id. at 31:18-23, 33:20-24.  Plaintiff returned to his cell to "cool off" and wash his

3   face.  Id. at 34:24-35:10.  Subsequently, plaintiff again approached cell 211.  Id. at 35:21.  After

4   briefly speaking with Gates, plaintiff walked back toward his cell.  Id. 36:1-37:6.  Subsequently,

5   plaintiff returned one more time to area of cell 211.  Id. at 57:11.  He started to walk away again,

6   but Austin persuaded plaintiff to come back to cell 211.  Id. at 57:24.  Plaintiff was talking with

7   Austin through the food port when, without any warning, Austin slashed plaintiff with an inmate-

8   manufactured weapon.  Id. at 60:18-24.  Plaintiff had not seen anything so fast in his life.  Id.

9         Defendant Lebeck did not know plaintiff was having any conflict with inmates

10  Austin and Gates, and plaintiff did not tell him.  Id. at 48:18-22.  Sherburn did not know either.

11  See id. at 49:18-50:7.

12  II.  Defendants' Motion

13        A.  Eighth Amendment Claim

14        Defendants seek summary judgment on plaintiff's Eighth Amendment claim on

15  two grounds.  First, defendants contend that they were not deliberately indifferent to any known

16  risk of harm to plaintiff, and none of their acts or omissions were the proximate cause of

17  plaintiff's injuries.  Second, defendants contend they are entitled to qualified immunity.

18        The Court of Appeals' order remanding this matter for consideration of the

19  defense of qualified immunity provides in relevant part:

20  **Legal Standard**

21      In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States
    Supreme Court set forth a two-part test for qualified immunity.  *Id.*
22  at 201.  First, a court must consider whether, based on the facts
    alleged in the light most favorable to the plaintiff, the officers
23  violated a constitutional right.  *Id*.  If no constitutional right was
    violated, then there is no further inquiry.  *Id*.  Second, if a right was
24  potentially violated, the court must consider whether the right at
    issue was clearly established.  *Id*.

25  **Discussion**

26

7

As to the first part of the *Saucier* analysis, we affirm the district court's determination that genuine issues of material fact preclude entry of summary judgment on whether Appellants' conduct violated the Eighth Amendment.  Whether Appellants acted with deliberate indifference by failing to escort Eichler during the prison lockdown is a question of fact.  The district court, in adopting the findings and recommendations of the magistrate judge, correctly pointed out that the safety concerns that were the basis for the lockdown and the escort policy that Appellants did not follow may support an inference that Appellants acted with deliberate indifference to a substantial risk that Eichler would be harmed.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (stating that a prison official cannot be liable for failing to protect one inmate from another unless the official acted with deliberate indifference to a substantial risk that the inmate would be harmed).  Because this inference and the disputed facts are sufficient on this record for a reasonable jury to conclude that Appellants violated Eichler's Eighth Amendment rights, we must proceed to the second part of the *Saucier* analysis.

To determine whether the right allegedly violated was "clearly established," the court must determine, in light of the *specific* context of the case, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  "If the law did not put the officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate."  *Id*.  This would be true even if Appellants actually violated Eichler's Eighth Amendment rights.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  By contrast, where "courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand," the officers are not entitled to summary judgment on qualified immunity.  *Saucier*, 533 U.S. at 202.

. . . .  The particularized inquiry required here is whether Appellants violated a clearly established constitutional right by failing to escort Eichler while he was out of his cell during the prison lockdown.  The district court did not consider this issue, but instead concluded that summary judgment on qualified immunity was inappropriate because a reasonable jury could conclude that Appellants had violated Eichler's Eighth Amendment rights.

Accordingly, we must remand for the district court to determine whether there existed any analogous facts, circumstance or authority for the proposition that, under the specific circumstances of this case, Appellants should reasonably have known they were violating Eichler's constitutional rights.  *See*

/////

/////

1  *Hope*, 536 U.S. at 739 (holding that the unlawfulness of a clearly
   established right must be apparent from existing authorities).

2

3  Order filed June 23, 2008, at 2-5.

4       In Estate of Ford v. Palmer, 301 F.3d 1043 (9th Cir. 2002), the United States

5  described the appropriate inquiry for determining whether a rule of law is "clearly established"

6  for purposes of qualified immunity:

7            [T]he Court has emphasized that determining whether the law
             was clearly established "must be undertaken in light of the specific
8            context of the case, not as a broad general proposition." Saucier,
             533 U.S. at 201. Therefore, it is not sufficient that Farmer [v.
9            Brennan] clearly states the general rule that prison officials cannot
             deliberately disregard a substantial risk of serious harm to an
10           inmate; here, in addition, it is relevant that neither Farmer nor
             subsequent authorities has fleshed out "at what point a risk of
11           inmate assault becomes sufficiently substantial for Eighth
             Amendment purposes." Farmer, 511 U.S. at 834 n. 3; cf. Helling v.
12           McKinney, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22
             (1993) (indicating in second-hand smoke case that a risk is
13           intolerable under the Eighth Amendment when it violates
             contemporary standards of decency to expose anyone unwillingly
14           to it).

15 Estate of Ford, at 1050-51.  The appropriate inquiry here is whether it would have been clear to a

16 reasonable correctional officer in defendants' position that plaintiff faced a substantial risk of

17 serious harm if left to collect food trays with one inmate porter but no correctional officer

18 supervision.  Under the undisputed facts of this case, this court finds that the answer to that

19 question is no.

20      At the time of the incident at bar CSP-Solano was on a phased unlock pursuant to

21 which some inmate workers, including plaintiff, were preapproved to resume working on the

22 tiers.  The rest of the inmates, including Austin, were locked in their cells, and all the cells had

23 recently been searched for weapons.  While plaintiff expressed general concern about violence to

24 defendants Sherburn and Lebeck, he also stated that he could and would resume picking up food

25 trays if defendant Sherburn did not return after a certain period of time.  Plaintiff did not inform

26 either defendant Sherburn or defendant Lebeck of any concern for his safety arising from his

1   encounters with inmates Austin and Gates after he picked up the food trays at cell 211.  Perhaps

2   most importantly, plaintiff was not assaulted while picking up the food trays at cell 211.  Rather,

3   he returned to the cell twice after he had retrieved the trays and was assaulted the second time he

4   returned to the cell.

5          For the foregoing reasons, this court finds that it would not have been clear to a

6   reasonable correctional officer in defendant Sherburn or Lebeck's position that plaintiff faced a

7   substantial risk of harm from being left with one other inmate to complete his porter duties.

8   Accordingly, defendants Lebeck and Sherbin are entitled to qualified immunity from liability on

9   plaintiff's Eighth Amendment claim.

10         B.  Negligence

11         Defendants also seek summary judgment on plaintiff's negligence claim on the

12  ground that Austin's assault on plaintiff was an independent act that was not reasonably

13  foreseeable to either defendant.

14              "To establish liability in negligence, it is a fundamental
               principle of tort law that there must be a legal duty owed to the
15             person injured and a breach of that duty which is the proximate
               cause of the resulting injury." Jacoves [v. United Merchandising
16             Corp.], 11 Cal.Rptr.2d [468] at 484 [(Cal.App.2nd Dist. 1992)].
               Proximate cause "limits the defendant's liability to those
17             foreseeable consequences that the defendant's negligence was a
               substantial factor in producing." Mendoza v. City of Los Angeles,
18             66 Cal.App.4th 1333, 78 Cal.Rptr.2d 525, 530 (1998). Whether an
               act is the proximate cause of injury is generally a question of fact;
19             it "is a question of law where the facts are uncontroverted and only
               one deduction or inference may reasonably be drawn from those
20             facts." Garman v. Magic Chef, Inc., 117 Cal.App.3d 634, 173
               Cal.Rptr. 20, 22 (1981).

21

22  Ileto v. Glock, Inc., 349 F.3d 1191, 1206 (9th Cir. 2003).  Assuming arguendo that defendants

23  breached a duty of care owed to plaintiff, the undisputed facts permit only one inference:  that

24  plaintiff's decision to return to cell 211 twice under the circumstances he described was not a

25  foreseeable consequence of defendant Sherburn and Lebeck's decisions to leave the area where

26  /////

1  plaintiff was collecting food trays, and those decisions were not the proximate cause of plaintiff's

2  injury.

3           For the foregoing reasons, this court finds that defendants are entitled to summary

4  judgment on plaintiff's negligence claim.

5           For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the

6  January 14, 2011 motion of defendants Sherburn and Lebeck for summary judgment be granted.

7           These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

9  days after being served with these findings and recommendations, any party may file written

10 objections with the court and serve a copy on all parties.  Such a document should be captioned

11 "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

12 failure to file objections within the specified time may waive the right to appeal the District

13 Court's order.  <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).

14 DATED: August 8, 2011.

15

16                                        _____

17                                        UNITED STATES MAGISTRATE JUDGE

18 12
   eich1108.msj
19

20

21

22

23

24

25

26

11