IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE EICHLER,

    Plaintiff,                    No. 2:04-cv-1108 GEB JFM (PC)

    vs.

CDC OFFICER SHERBURN, et al.,      <u>ORDER AND</u>

    Defendants.             <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. §1983. This matter is before the court on cross motions for summary judgment on the question of whether Mercy Hospital of Folsom (Mercy or Mercy Hospital) complied with the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (EMTALA) when plaintiff arrived at Mercy's emergency room on the evening of June 1, 2003, and on pendent state law negligence and medical malpractice claims against Mercy. It is also before the court on the motion of defendant Dr. Gary Nugent to dismiss on the ground that the claims against him are time-barred.

PROCEDURAL BACKGROUND

        This action is proceeding on claims raised in plaintiff's third amended complaint, filed July 14, 2005, against Mercy, California Department of Corrections and Rehabilitation

1

(CDCR) Correctional Officers Sherburn[1] and Lebeck (Sherburn and Lebeck), and Gary Nugent, M.D.

   By separate orders, summary judgment was entered in favor of Mercy and denied to Sherburn and Lebeck. See Orders filed October 26, 2006 (Mercy) and November 1, 2006 (Sherburn and Lebeck). On November 21, 2006, plaintiff filed a notice of interlocutory appeal from several orders in this action. On November 29, 2006, defendants Sherburn and Lebeck filed an interlocutory appeal from the order denying summary judgment on the ground of qualified immunity. By order filed December 14, 2006, this action was stayed pending resolution of those interlocutory appeals.[2] On February 20, 2008, Mercy filed a request for entry of judgment pursuant to Fed. R. Civ. P. 54. In the request, Mercy noted that plaintiff's appeal from the grant of summary judgment to Mercy had been dismissed. By order filed May 7, 2008, Mercy's request was granted and a judgment pursuant to that order was entered on the same day.

   On May 28, 2008, plaintiff filed a notice of appeal from the judgment entered on May 7, 2008. By order filed June 23, 2010, the United States Court of Appeals for the Ninth Circuit resolved the interlocutory appeal filed by plaintiff from the grant of summary judgment in favor of Mercy. The court of appeals affirmed the grant of summary judgment to Mercy on plaintiff's Eighth Amendment claim. Eichler v. Sherbin, No. 08-16404, slip op. at 2. The court of appeals vacated the grant of summary judgment to Mercy on the question of whether it had

---

[1] Defendant Sherburn is sometimes identified in the record as Correctional Officer Sherbin. It appears that the correct spelling of said defendant's name is Sherburn. See Ex. B to Defendants' Statement of Undisputed Facts, Declaration of D. Sherburn in Support of Defendants Motion for Summary Judgment, filed January 14, 2011.

[2] Plaintiff's November 21, 2006 interlocutory appeal was dismissed on January 19, 2007. The court of appeals subsequently reversed the denial of summary judgment to defendants Sherburn and Lebeck on the ground of qualified immunity and remanded the matter for further consideration of that defense. After further proceedings, on August 9, 2011, this court issued findings and recommendations recommending that defendants Sherburn and Lebeck be granted summary judgment on plaintiff's Eighth Amendment claim on the ground of qualified immunity and on the merits of plaintiff's negligence claim against these two defendants. Those findings and recommendations were adopted in full by the district court by order filed September 28, 2011.

complied with the EMTALA and remanded the matter for reopening of discovery on that claim. Id. at 3-4.  The court of appeals also vacated the dismissal of plaintiff's state law medical malpractice and negligence claims and remanded the matter for further consideration of whether to exercise supplemental jurisdiction over those claims.  Id. at 5.  The court of appeals affirmed the denial of plaintiff's motion to amend his complaint to substitute the doctor and nurse who treated him at Mercy for Doe defendants, held that the court did not abuse its discretion in denying plaintiff's motion for appointment of counsel, and held that plaintiff could renew his motion for appointment of a medical expert with the reopening of discovery.  Id. at 5-6.

On July 2, 2010, this court granted all parties fifteen days to file a brief addressing whether the court should exercise supplemental jurisdiction over plaintiff's state law claims. Mercy did not respond to that order and now affirmatively represents that it has no opposition to the exercise of such jurisdiction and seeks adjudication of all claims on the merits.  See Points and Authorities in Support of Defendant Mercy Hospital of Folsom's Notice of Motion and Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, filed February 25, 2011, at 2-3.  On the same day, the court issued a discovery and scheduling order, setting October 22, 2010 as the deadline for completion of discovery.

On July 21, 2010, the court issued an order providing that the action would proceed on plaintiff's state law medical malpractice and negligence claims as well as on the EMTALA claim.  After additional proceedings, by order filed January 28, 2011, the court noted that the matter had been referred for consideration of appointment of counsel and that the court would entertain a motion to appoint an expert witness from counsel should the court be successful in finding counsel to represent plaintiff.  See Order filed January 28, 2011 at 9.[3] Subsequently, by order filed February 10, 2011, the court appointed counsel to represent plaintiff.

On February 25, 2011, after receiving an extension of time to do so, Mercy filed

---

[3] For that reason, plaintiff's pro se motion for appointment of an expert witness was denied without prejudice.  See id.

3

the motion for summary judgment at bar. In relevant part, by order filed March 25, 2011, counsel for plaintiff and counsel for Mercy were directed to confer and submit to the court a proposed briefing schedule for Mercy's motion for summary judgment. The parties filed their proposed joint schedule on April 21, 2011.

On April 25, 2011, plaintiff filed, pro se, the pending cross-motion for summary judgment, together with a motion for an extension of time to file an opposition to Mercy's motion for summary judgment. On the same day, plaintiff filed, pro se, an opposition to the motion for summary judgment, a statement of undisputed facts in opposition to the motion, and objections to Mercy's request for judicial notice. By order filed May 2, 2011, the court adopted the briefing schedule proposed in the April 21, 2011 filing, and denied plaintiff's pro se cross motion for summary judgment and his motion for extension of time because he was represented by counsel. On May 20, 2011, counsel for plaintiff filed an opposition to Mercy's motion for summary judgment and a request pursuant to Rule 56(d) for a continuance to permit additional specific discovery on the appropriateness of the medical screening provided to plaintiff at Mercy on June 1, 2003.

On May 23, 2011, plaintiff filed a request to remove his court appointed attorney. On June 7, 2011, counsel for plaintiff filed a motion to withdraw as counsel for plaintiff. After a hearing on June 9, 2011 with plaintiff participating by telephone and counsel for plaintiff present, the court by written order filed June 21, 2011, granted counsel's motion to withdraw. In an order filed the same day, the court vacated that part of the May 2, 2011 order that denied plaintiff's cross-motion for summary judgment and set a briefing schedule on that motion, granted plaintiff's June 3, 2011 motion to file a supplemental opposition to Mercy's motion for summary judgment, indicated that plaintiff's supplemental opposition, filed the same day, would be considered, and granted Mercy ten days to file a supplemental reply. In addition, plaintiff sought and received an extension of time to file a reply brief in support of his cross-motion for summary

judgment; plaintiff filed the reply brief on August 8, 2011. See Order filed December 14, 2011.[4]

Defendant Nugent's motion to dismiss was filed May 31, 2011.

I. Cross Motions for Summary Judgment

    A. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

---

[4] In view of plaintiff's motion for removal of his court-appointed attorney, the court will recommend denial of the Rule 56(d) request. Plaintiff's request for appointment of an expert, made through his former attorney, will also be denied. The court has considered the substantive arguments raised by counsel in opposition to Mercy's motion for summary judgment in connection with preparation of these findings and recommendations.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

1   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
2   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
3   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
4   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
5   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
6   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
7          On October 22, 2004, the court advised plaintiff of the requirements for opposing
8   a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
9   F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.
10  Eikenberry, 849 F.2d 409 (9th Cir. 1988).
11     B.  Analysis
12         The claims against Mercy arise from an incident at California State Prison-
13  Sacramento (CSP-Sacramento) on June 1, 2003 when plaintiff was slashed by another inmate
14  with an inmate-manufactured weapon.  Following the incident, plaintiff was transported to Mercy
15  for emergency treatment.  He was transferred from Mercy to the University of California Davis
16  Medical Center (UC Davis).  Plaintiff raises state law medical malpractice and negligence claims
17  against Mercy alleging that Mercy "refused to treat plaintiff who had a serious medical need, on
18  or about June 1, 2003." (Amended Complaint at 7.)  The parties also contest whether Mercy
19  violated the EMTALA by transferring plaintiff to UC Davis.
20         1.  Undisputed Facts
21         On June 1, 2003, plaintiff was incarcerated at CSP-Sacramento.  On that day,
22  plaintiff was slashed in the face with an inmate-manufactured weapon by another inmate.  At
23  approximately 5:59 p.m. plaintiff was transported by paramedics from CSP-Sacramento to Mercy
24  Hospital.  Plaintiff arrived at Mercy at approximately 6:25 p.m.
25         On arrival at Mercy, plaintiff was seen by Dr. Grant G. Nugent and R.N. Romano.
26  The laceration to plaintiff's face measured 12 centimeters or 5 inches in length, it was 2 or 3

1  centimeters deep through the skin and all soft tissue structures to the buccal mucosa, which is the
2  mucous membrane on the inside of the cheek.  Declaration of Robert E. Buscho, M.D. in Support
3  of Mercy Hospital of Folsom's Motion for Summary Judgment, filed February 25, 2011 (Buscho
4  Declaration), at ¶ 7; see also Ex B to Declaration of Jamie Pierson in Support of Mercy Hospital
5  of Folsom's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment,
6  filed February 25, 2011 (Pierson Declaration), at MERCY 0006 .

7  Gel foam bandages were put on plaintiff's wound.  Pl.'s June 26, 2006 Aff. at 18.
8  Plaintiff's vital signs were checked during the two hours he was at Mercy, with
9  his blood pressure and pulse rate being taken at least four different times.   Buscho Declaration at
10 ¶ 12; Ex. B to Pierson Declaration at MERCY 0006.
11 Plaintiff's wound was not sutured at Mercy but he was transferred to UC Davis
12 for the suturing .  See Buscho Declaration at ¶ 9.  The reason given for the transfer on the
13 Transfer Summary prepared by Dr. Nugent was that a prison doctor, Dr. Borges, requested UC
14 Davis because of the "Prison Care Contract with UCD."  Ex. B to Pierson Declaration at
15 MERCY 0007.  Dr. Nugent certified the transfer with the following notation:  "Patient is a CSP
16 Sac inmate sent to this facility against the wishes of the prison.  Referring physician prison
17 referring physician [sic] requested UCDMC."  Id.  Prior to the transfer, plaintiff signed an
18 acknowledgment of the transfer.  Id.  The acknowledgment reads:

> PATIENT ACKNOWLEDGEMENT FOR MEDICAL AND
> NON-MEDICAL TRANSFERS:
> I understand that I have a right to receive a medical screening,
> examination and evaluation by a physician, or other appropriate
> personnel, without regard to my ability to pay, prior to any transfer
> from this hospital and that I have a right to be informed of the
> reasons for my transfer.  I acknowledge that I have received
> medical screening, examination and evaluation by a physician, or
> other appropriate personnel, and that I have been informed of the
> reasons for my transfer.  All transfers have the inherent risks of
> traffic delays, accidents during transport, inclement weather, rough
> terrain or turbulence, and the limitations of equipment and
> personnel present in the vehicle.

26 Id.

Once at UC Davis, plaintiff's wound was sutured layer by layer by a specialist who noted that both the facial nerve and the parotid gland were intact. Buscho Declaration at ¶ 9.

2. EMTALA Claim

The EMTALA was enacted "to ensure that individuals, regardless of their ability to pay, receive adequate emergency medical care. Jackson v. E. Bay Hosp., 246 F.3d 1248, 1254 (9th Cir.2001)." Bryant v. Adventist Health System/West, 289 F.3d 1162, 1165 (9th Cir. 2002). "Congress was concerned that hospitals were 'dumping' patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1255 (9th Cir.1995).

The EMTALA requires that

> [i]f an individual seeks emergency care from a hospital with an emergency room and if that hospital participates in the Medicare program, then "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a); Eberhardt, 62 F.3d at 1255-56. If the hospital's medical staff determines that there is an emergency medical condition, then, except under certain circumstances not relevant here, the staff must "stabilize" the patient before transferring or discharging the patient. 42 U.S.C. § 1395dd(b)(1); Baker v. Adventist Health, Inc., 260 F.3d 987, 992 (9th Cir.2001). The term "to stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" 42 U.S.C. § 1395dd(e)(3)(A). Transfer includes both discharge and movement to another facility. Id. § 1395dd(e)(4).

Bryant at 1165. For purposes of the EMTALA "a medical screening examination is 'appropriate' if it is designed to identify *acute* and *severe* symptoms that alert the physician of the need for *immediate* medical attention to prevent serious bodily injury." Eberhardt, 62 F.3d at 1257

9

(emphasis in original). The EMTALA does not require a hospital to "alleviate completely" an emergency medical condition. Brooker v. Desert Hosp. Corp., 947 F.2d 412, 415 (9th Cir. 1991). Rather, a hospital is required to provide patients "with appropriate medical screening and stabilizing treatment" and to refrain from transferring a patient unless the patient is stabilized. Id.

Defendant Mercy seeks summary judgment on plaintiff's EMTALA claim on the grounds that the undisputed facts show that the requirements of the EMTALA were complied with in connection with plaintiff's transfer to UCDavis. Specifically, defendant contends that (1) plaintiff was medically screened appropriately; and (2) plaintiff was stabilized prior to the transfer. In the alternative, Mercy contends that the transfer was proper under 42 U.S.C. § 13955dd(C). In his cross-motion for summary judgment, plaintiff contends that he was neither provided with a proper screening nor stabilized prior to the transfer.

Despite plaintiff's contentions to the contrary, the undisputed evidence shows that plaintiff was provided with a medical screening that identified the relevant medical condition.[5] Plaintiff suffered a laceration to his face that was almost five inches long and almost through to the mucosa. Plaintiff's Declaration in Opposition to Mercy's Second and Successive Motion for Summary Judgment, filed April 25, 2011 (Eichler Decl.), at ¶ 4. The laceration is recorded in plaintiff's medical records prepared by staff at Mercy. Ex. B to Pearson Decl. at MERCY 0002-

---

[5] The United States Court of Appeals for the Ninth Circuit has joined other circuits in holding that "a hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms." Jackson v. East Bay Hosp., 246 F.3d 1248, 1256 (9th Cir. 2001). In its remand order, the United States Court of Appeals for the Ninth Circuit suggested that certain quality of care and service compliance standards, as well as "quality assurance audits and reviews" might "shed light" on whether plaintiff received a screening comparable to that received by other Mercy patients with similar symptoms, Order filed June 23, 2010, at 4 n.3, and a request to conduct discovery targeted at this issue was included in plaintiff's then-counsel's opposition to Mercy's motion for summary judgment. The purpose of the screening requirement is "to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). It is undisputed that the relevant medical conditions were identified by staff at Mercy. For that reason, this court finds that further discovery directed at Mercy's screening procedures is not "essential to justify" plaintiff's opposition to Mercy's motion. Cf. Fed. R. Civ. P. 56(d).

0006.[6]  It is also recorded in plaintiff's medical records from UC Davis.  Ex. E to Pearson Decl. at 000005.  Plaintiff bled profusely from the laceration.  See Eichler Decl. at ¶ 5, 16; Ex. E to Pearson Decl. at 000007.  That too is recorded in plaintiff's medical records from Mercy.  Ex. B to Pearson Decl. at MERCY 0006.  The medical screening provided at Mercy accurately identified plaintiff's injury and the bleeding caused by the laceration.  For that reason, this court finds that plaintiff received an appropriate medical screening as required by the EMTALA.

        The undisputed evidence also shows that plaintiff was "stabilized" within the meaning of the EMTALA prior to his transfer to UC Davis.  Shortly after plaintiff arrived at Mercy, his blood pressure was recorded at 162/66 and his pulse was 90.  Ex. B to Pearson Decl. at MERCY 0005.[7]  Approximately two hours later, at the time of his transport to UC Davis, plaintiff's blood pressure was 115/54 and his pulse was 89.  Id. at MERCY 0007; see also Ex. E to Pearson Decl. at 000013 (blood pressure recorded by medic ambulance service as 110/60) and at 000005 (blood pressure recorded at UC Davis was 105/65 and pulse was 73).  Plaintiff's wound was "pressure dressed" at Mercy.  Id. at 000005.  The medic ambulance service notes also reflect the pressure dressing, and include a note that the gauze was "caked with bright red blood."  Id. at 000013.  The medics also noted that plaintiff was "alert and cooperative, unable to speak due to wound and dressing, communicating with hands, indicates pain is little, no numbness/tingling, [down arrow] bleeding into mouth, denies diff. breathing."  Id.  The history taken at UC Davis includes findings that "acute blood loss" was "not present."[8]  Id. at 000005.

---

[6] Plaintiff's repeated assertions that staff at Mercy falsified the medical records is unsupported by admissible evidence sufficient to raise a question concerning the accuracy of those records.

[7] As noted above, plaintiff alleges in conclusory fashion that the medical records from Mercy were falsified, but he has presented no evidence in support of this assertion.  See Bryant at 1167 ("[p]laintiff's conclusory statement that there is a genuine issue of material fact, without evidentiary support, is insufficient to withstand summary judgment.").

[8] This is indicated by a slash on the review of plaintiff's hematologic status for acute blood loss.  Ex. E to Pearson Decl. at 000005.

The same form also provides a box that can be checked if review of a patient's systems is "unobtainable" because the patient is "unstable." Id. That box is not checked on plaintiff's record, and the review of systems was completed. Id.

At UC Davis, medical staff found that plaintiff's mucosa had been spared, his facial nerve was intact, and there was no involvement of the parotid duct. Id. at 000006, 000007. The wound was sutured and plaintiff was scheduled for a follow up visit on the following Friday. Id. at 000007.[9]

In support of their motion for summary judgment, Mercy has provided a declaration from an emergency medicine physician who avers that plaintiff was "examined and stabilized while at Mercy", that he was "medically stable while at Mercy", and that it was therefore safe to transfer plaintiff to UC Davis. Declaration of Robert E. Buscho, M.D. in Support of Motion for Summary Judgment, filed February 25, 2011 at ¶¶ 8, 12.

Based on the evidence, the court finds that there is no triable issue of material fact as to whether the stabilization requirements of the EMTALA were complied with prior to plaintiff's transfer to UC Davis.[10] Accordingly, Mercy is entitled to summary judgment on the EMTALA claim.

3. Negligence

In the third amended complaint, plaintiff claims that Mercy and its staff were negligent and committed malpractice by "refusing to treat" plaintiff and in "failing to summons medical transportation." Third Amended Complaint, filed July 14, 2005, at 15. Mercy seeks

---

[9] June 1, 2003 was a Sunday. See http://www.timeanddate.com/calendar/?year=2003.

[10] Plaintiff's claim against Mercy rests largely on his contention that the emergency room physician at Mercy refused to treat him based on the absence of a contract for services between Folsom and Mercy. There is evidence in the record that the decision to transfer plaintiff to UC Davis was based on contract considerations rather than medical necessity. The dispute between the parties in this regard is not material to resolution of the question of whether Mercy complied with EMTALA. The motive for plaintiff's transfer is not relevant to that question where, as here, the undisputed evidence shows that plaintiff was appropriately medically screened and stabilized before he was transferred to UC Davis.

summary judgment on these claims. Mercy contends that plaintiff's allegations give rise to only a medical malpractice claim, and that there is no genuine issue of material fact as to whether Mercy met the requisite standard of care. Mercy also contends that they are not liable for any alleged malpractice by defendant Nugent because he was not an agent or an employee of Mercy, and there is no contention that Mercy was negligent in its hiring and screening practices with respect to medical staff.

Under California law, "a plaintiff cannot, on the same facts, state causes of action for ordinary negligence as well as professional negligence, as a defendant has only one duty that can be measured by one standard of care under any given circumstances." Bellamy v. Appellate Department, 50 Cal.App.4th 797, 804 (Cal.App. 5 Dist. 1996) (citing Flowers v. Torrance Memorial Hospital Medical Center, 8 Cal.4th 992, 1001 (1994).

Professional negligence is defined in § 340.5 as

> a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury . . . , provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

Cal. Code Civ. P. § 340.5. Here, as noted above, plaintiff alleges in relevant part that he was taken to Mercy and that the on duty physician, refused to treat him, denied him medical care, and did not summon medical transportation to take plaintiff to another hospital. Third Amended Complaint, at 15. These allegations give rise to a cause of action for professional negligence because they all describe acts or omissions to act "by a health care provider in the rendering of professional services." Cal. Code Civ. P. § 340.5. Thus, plaintiff's sole claim against Mercy is one for professional negligence.

In support of their motion for summary judgment, Mercy has presented the declaration of Dr. Buscho, who is, as noted above, an emergency medicine physician. Dr. Buscho avers avers in relevant part that the decision to transfer plaintiff to UC Davis "was

13

entirely appropriate and within the standard of care," that "[t]he nurses and hospital personnel who treated [plaintiff] on June 1, 2003 met the applicable standard of care" and that based on his "education, training, and experience, it is [his] expert opinion that the care and treatment rendered to [plaintiff] while he was at Mercy Hospital of Folsom by the Mercy Hospital of Folsom nursing staff was entirely appropriate and met the requisite standard of care." Buscho Decl. at ¶ 16. Plaintiff has not presented any expert testimony of his own to rebut this evidence tendered by Mercy. Under California law,

> [w]hen a defendant moves for summary judgment [in a medical malpractice case] and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence. Willard v. Hagemeister, 121 Cal.App.3d 406, 412, 175 Cal.Rptr. 365, 369 (1981).

Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988).

In the opposition filed by his court-appointed attorney, plaintiff contends that the facts of plaintiff's claim fall within the "common knowledge" exception to the foregoing rule. "Expert evidence is not needed when the type of conduct required by the particular circumstances is within the common knowledge of laymen." Id. at 392 n.1. The type of conduct required to respond appropriately to plaintiff's injury is not "within the common knowledge of laymen." Id.

Plaintiff also suggests that Mercy was negligent per se because it violated provisions of California Health and Safety Code § 1317. "California law creates a rebuttable presumption of failure to exercise due care if a person violates a public regulation, the violation proximately causes an injury, the injury is of the type the regulation is designed to prevent, and the injured party is a type of person the regulation was meant to protect. Cal.Evid.Code § 669(a) (West Supp.1990); see Short v. State Compensation Ins. Fund, 52 Cal.App.3d 104, 110, 125 Cal.Rptr. 15, 19 (1975)." Brooker, 947 F.2d at 416. California Health and Safety Code § 1317 is California's version of the EMTALA. Jackson, 246 F.3d at 1257.

> It imposes on California hospitals an obligation to tend to all patients requesting emergency care:

14

> Emergency services and care shall be provided to any person requesting the services or care, or for whom services or care is requested, for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when the facility has appropriate facilities and qualified personnel available to provide the services or care.

> Cal. Health & Safety Code § 1317(a) (West 2000). The statute defines "emergency services and care" as "medical screening, examination, and evaluation by a physician ... to determine if an emergency medical condition or active labor exists and, if it does, the care, treatment, and surgery by a physician necessary to relieve or eliminate the emergency medical condition, within the capability of the facility." Cal. Health & Safety Code § 1317.1(a)(1).

> Section 1317 also provides a safe harbor for hospitals and doctors who refuse to render care, provided that their refusal is based on a determination that the person is not suffering from an emergency condition or that they cannot treat the emergency condition afflicting the patient:

> Neither the health facility, its employees, nor any physician and surgeon ... shall be liable in any action arising out of a refusal to render emergency services or care if the refusal is based on the determination, exercising reasonable care, that the person is not suffering from an emergency condition, or that the health facility does not have the appropriate facilities or qualified personnel available to render those services.

> Cal. Health & Safety Code § 1317(c).

Jackson, at 1258.

Here, the undisputed evidence shows that Mercy provided a medical screening to plaintiff. The undisputed evidence also shows that the staff at Mercy did not "refuse to render" any care to plaintiff. The staff at Mercy provided stabilizing care, but did not provide full treatment for the laceration. In support of their motion for summary judgment, Mercy has presented declarations from Dr. Buscho and Dr. Nugent. Defendant Nugent avers that he examined plaintiff and determined that plaintiff's "laceration was 'critical' due to the depth and severity, and therefore required closure by a plastic surgeon." Declaration of Grant G. Nugent, M.D. in Support of Mercy Hospital of Folsom's Motion for Summary Judgment, filed February

25, 2011 (Nugent Decl.), at ¶ 3.  Defendant Nugent avers that he was "concerned that [plaintiff]'s facial nerve or parotid gland had been injured, both of which would require plastic surgery revision by a specialist."  Id.  Both defendant Nugent and Dr. Buscho aver that Mercy does not have a plastic surgeon on call.  Buscho Decl. at ¶ 10; Nugent Decl. at ¶ 6.

Plaintiff notes that the reason for the transfer given in the medical records is that the Chief Medical Officer of the prison requested that plaintiff go to UC Davis.  Ex. B to Pearson Decl. at MERCY 0002, 0004, 0007.  The transfer summary specifically gives the reason for the transfer as "Dr. Borges CSP Sac Requested UCD".  Id. at MERCY 0007.  The box next to "Service Not Available, Specify:" is not checked on the form; instead, the box marked "Other" is checked, and the words "Prison care contract with UCD" are written beside the box.  Id.

Plaintiff contends that if, as the foregoing records suggest, plaintiff's transfer to UC Davis was for non-medical reasons, Mercy and its staffed breached their duty under California Health and Safety Code § 1317 to provide emergency services to plaintiff.  However, the court need not reach this argument because there is no admissible evidence in the record that the transfer to UC Davis was the proximate cause of any additional injury to plaintiff beyond that sustained as a result of the laceration.[11]

For the foregoing reasons, this court finds that plaintiff has failed to present any evidence, expert or otherwise, sufficient to create a triable issue of material fact as to whether Mercy was negligent in connection with the events of June 1, 2003.  Mercy is entitled to summary judgment on plaintiff's state law claim.

For all of the foregoing reasons, Mercy's motion for summary judgment should be granted, and plaintiff's cross-motion for summary judgment should be denied.

---

[11] Plaintiff's assertions in his own declaration that his "face is now disfigured and many doctors have remarked on 'the inadequate care and treatment provided by Mercy'" and that he "still suffers ongoing medical problems relating to this injury and may very well be due to the inadequate and unlawful treatment at Mercy", Eichler Decl. at ¶¶ 45-46, are not sufficient evidence that the decision to transfer plaintiff proximately caused injury to him.

II. <u>Defendant Nugent</u>

As noted above, on May 31, 2011, defendant Nugent moved to dismiss the claims against him as time-barred. The claims against defendant Nugent are state law negligence and medical malpractice claims. In his motion, defendant Nugent contends that under the circumstances of this case plaintiff's sole cause of action against him is a claim for medical malpractice and that such a claim is barred by the statute of limitations.

For the reasons set forth <u>supra</u>, the sole remaining federal claim in this action should be resolved in favor of defendant Mercy, which would leave pending only plaintiff's state law claim against defendant Nugent.[12] The record suggests that it is unlikely plaintiff will prevail on his state law claim against defendant Nugent even if the claim is timely. Under the circumstances, the district court should decline to exercise supplemental jurisdiction over plaintiff's claim against defendant Nugent, and that claim should be dismissed. <u>See</u> 28 U.S.C. § 1367.

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's May 20, 2011 request for appointment of an expert is denied; and

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's May 20, 2011 Rule 56(d) request be denied;

2. Mercy's February 25, 2011 motion for summary judgment be granted;

3. Plaintiff's April 25, 2011 cross-motion for summary judgment be denied; and

4. The district court decline to exercise supplemental jurisdiction over plaintiff's sole state law claim, for medical malpractice, against defendant Nugent.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written

---

[12] For the reasons set forth in section I(B)(3), the sole cognizable claim against defendant Nugent is a claim for medical malpractice.

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).

DATED: February 22, 2012.

_/s/ John F. Moulds_<br>
UNITED STATES MAGISTRATE JUDGE

12
eich1108.msj